UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND


CIVIL ACTION NO. 09-84-GWU


JACKIE MCDOWELL,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.     Is the claimant currently engaged in substantial gainful activity?
       If so, the claimant is not disabled and the claim is denied.

2.     If the claimant is not currently engaged in substantial gainful
       activity, does he have any "severe" impairment or combination
       of impairments--i.e., any impairments significantly limiting his
       physical or mental ability to do basic work activities?  If not, a
       finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine
       whether the claimant's severe impairment(s) or combination of
       impairments meets or equals in severity an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions  . . .  or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jackie McDowell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the cervical spine and depression/anxiety.  (Tr. 21).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. McDowell retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 23-30).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 37, post high school education, and work experience as a certified nurse's assistant, cook, and waitress, could perform any jobs if she were limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, with the ability to sit six hours in an eight-hour day (no more than one hour at a time), stand one hour in an eight-hour day (no more than 30 minutes at a time), and walk one hour in an eight-hour day (no more than 20 to 30 minutes at a time) and also had the following non-exertional restrictions.  She: (1) could perform frequent (not continuous) reaching overhead and frequently use her feet for foot controls; (2)

7

could never climb ladders and scaffolds; (3) could occasionally climb ramps and stairs; (4) could frequently (but not continuously) balance, stoop, kneel, crouch, and crawl; (5) could never work around unprotected heights; (6) could occasionally be exposed to vibrations; (7) could have frequent (not continuous) exposure to moving machinery, operating a motor vehicle, working in humidity, wetness, and temperature extremes of hot and cold; and (8) would have a moderately limited ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public and respond appropriately to changes in the work setting.  (Tr. 34-5). The ALJ also specified that the individual could understand and recall short and simple instructions, sustain attention for two-hour segments at a time, tolerate contact with coworkers and supervisors in non-public settings, and adapt as needed to work settings involving routine, low pressure adjustments.  (Tr. 35-6).  The VE responded that there were jobs at the sedentary level which such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 36).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning September 21, 2007 due to numbness in her hands, severe headaches, difficulty walking, standing, and sitting,

trouble reaching above her head, and an inability to lift anything over five pounds. (Tr. 164).  On appeal, she argues that the ALJ committed error in rejecting the opinion of her treating physician, Dr. Bal K. Bansal, a neurologist and psychiatrist. Dr. Bansal treated the plaintiff both before and after she stopped working and made several statements in his office notes regarding her maximum recommended level of exertion and general ability to perform her job, in addition to making a formal, detailed functional assessment.  The ALJ declined to give Dr. Bansal's formal opinion, as set out in a form headed "Physical Medical Assessment" (Tr. 335-8), controlling weight because it was inconsistent with comments he made in his office notes and because of the lack of corroborating objective findings.  (Tr. 26).

As a result, the plaintiff maintains that the ALJ had a duty under the Commissioner's regulations at 20 C.F.R. § 404.1512(e) to recontact Dr. Bansal for more information.  This section states, in pertinent part, that:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.

The section goes on to provide procedures for recontacting the treating physician "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  Id.

The plaintiff suggests that the inconsistencies in Dr. Bansal's reports as cited by the ALJ were reasonable because the physician's opinions covered a significant span of time from August, 2006 until the formal assessment was given in October, 2008.  The plaintiff maintains that § 404.1512(e) required the ALJ to recontact Dr. Bansal to allow him an opportunity to resolve the inconsistencies.

The duty to recontact a medical source is not triggered unless the evidence is inadequate or incomplete.  Littlepage v. Chater, 134 F.3d 371, 1998 WL 24999 (6th Cir. 1998).  In the present case, the records from Dr. Bansal were not incomplete or inadequate to make a decision.  The ALJ correctly noted that the physician's conclusions regarding the plaintiff's functional capacity were inconsistent to a degree that made them of dubious reliability.[1]  These varying opinions are not an issue that can be resolved by asking the source for more information.  Moreover, the ALJ placed as much weight on the lack of objective findings to support the

---

[1]On October 4, 2007, shortly after the plaintiff stopped work, Dr. Bansal stated that he did not think Mrs. McDowell could continue at her job, which required "a lot of medium to heavy duty work," but other than avoiding medium to heavy duty work she should try to be as active as possible.  (Tr. 233).  He made essentially the same statement a few weeks later, and in December of 2007.  (Tr. 231, 278).  However, in March, 2008, Dr. Bansal asserted that his patient was "totally disabled to be employed into any sustained gainful employment, even light duty work, even on a part-time basis." (Tr. 325).  He appeared to retreat from this position in his next office note from April, 2008, when he stated that he did not think she could "go back to the work she was doing before."  (Tr. 322).  Subsequently, he prepared an assessment limiting the plaintiff to less than full-time sitting and standing, in addition to having numerous other restrictions. (Tr. 335-8).

extreme restrictions of daily activities claimed by the plaintiff.  There is no suggestion that there are any records or examination results available to Dr. Bansal which are not included in the court transcript.  Therefore, the court finds that the record before the ALJ was not incomplete or inadequate.  The ALJ reasonably chose to give controlling weight to the restrictions of a consultative examiner, Dr. Jules Barefoot, who had at least some MRI records to review.  (Tr. 346-57).

The decision will be affirmed.

This the 30th day of June, 2010.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**